## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF ARKANSAS

| | | |
|---|---|---|
| MARTIN POT and | ) | |
| SECOND AMENDMENT FOUNDATION, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 3:13-CV-3102-TLB |
| | ) | |
| COLONEL STAN WITT, in his official | ) | |
| capacity as Director of the Arkansas State | ) | |
| Police, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

NOW COME the Plaintiffs, MARTIN POT and SECOND AMENDMENT

FOUNDATION, INC., by and through undersigned counsel, and submit their

Memorandum of Points and Authorities in Support of their Motion for Preliminary

Injunction.

Dated: March 20, 2014                    Respectfully submitted,


                                         By: _____/s/ David G. Sigale_____
                                                  David G. Sigale

                                         Attorney for Plaintiff

David G. Sigale, Esq. (#6238103 (IL)
LAW FIRM OF DAVID G. SIGALE, P.C.
739 Roosevelt Road, Suite 304
Glen Ellyn, IL 60137
630.452.4547
dsigale@sigalelaw.com

*TABLE OF CONTENTS*

Table of Authorities ……………………………………………………….………... iii

Preliminary Statement ........................................................................... 1

Statement of Facts ...........................................................................  2

    A.    Arkansas's Ordinance Bans Legal Aliens from Concealable Firearm
        Registration ........................................................................... 2

    B.    The Registration Prohibition's Impact on POT and Similarly-Situated
        Arkansas Residents .............................................................  3

Summary of Argument ......................................................................... 6

Argument .......................................................................................... 6

    I.    THE SECOND AMENDMENT APPLIES TO PLAINTIFF POT AND
        THE ORGANIZATIONAL PLAINTIFFS' LEGAL ALIEN
        MEMBERS ……………………………………………………..  7

    II.    PLAINTIFFS WILL SUFFER IRREPARABLE HARM IN THE
        ABSENCE OF PRELIMINARY INJUNCTIVE RELIEF................... 13

    III.    TRADITIONAL LEGAL REMEDIES ARE INADEQUATE TO
        RELIEVE THE HARM  OF THE BAN ON CONCEALABLE
        FIREARM REGISTRATION BY LEGAL ALIENS .......................... 15

    IV.    PLAINTIFFS WILL PREVAIL ON THE MERITS, AS
        ARKANSAS'S BAN ON CONCEALABLE FIREARM
        ENDORSEMENTS VIOLATES THEIR SECOND AND
        FOURTEENTH AMENDMENT RIGHTS ............................................ 16

    V.    THE BALANCE OF INTERESTS FAVOR IMMEDIATE
        INJUNCTIVE RELIEF........................................................ 18

Conclusion .................................................................................. 19

### *TABLE OF AUTHORITIES*

<u>Cases</u>

*Bridges v. Wixon,*
  326 U.S. 135 (1945) ...................................................................... 8

*City of Cleburne v. Cleburne Living Center,*
  473 U.S. 432, 439 (1985) ....................................................... 14

*Dataphase Systems, Inc. v. C L Systems, Inc.,*
  640 F.2d 109 (8th Cir. 1981) ................................................. 16

*District of Columbia v. Heller,*
  128 S. Ct. 2783 (2008)................................................................. *passim*

*Elrod v. Burns,*
  427 U.S. 347 (1976) ............................................................. 13

*Ezell v. City of Chicago,*
  651 F.3d 684 (7th Cir., 2011) ...................................................11, 13, 14, 15

*Fletcher v. Haas,*
  851 F. Supp. 2d 287 (D.Mass, 2012) ...................................... 9, 10, 11, 17

*Graham v. Richardson,*
  403 U.S. 365 (1971) ............................................................. 8

*Jackson v. Eden,*
  1:12-CV-421 (D.NM) ........................................................... 17, 18

*Kikumura v. Hurley,*
  242 F.3d 950, 963 (10th Cir. 2001) ....................................... 14

*Kwong Hai Chew v. Colding,*
  344 U.S. 590 (1953) ............................................................. 8

*Lowry v. Watson Chapel School District,*
  540 F.3d 752 (8th Cir. 2008) ................................................ 13

*McDonald v. City of Chicago,*
  130 S. Ct. 3020 (2010) ..................................................... 12, 13, 16

*Mid-America Real Estate Co. v. Iowa Realty Company,*
  406 F.3d 969 (8th Cir. 2005) ............................................... 16

iii

*Mitchell v. Cuomo,*
    748 F.2d 804 (2d Cir. 1984) ……………………………………………15

*Moore v. Madigan,*
    702 F.3d 933 (7th Cir. 2012) …………………………………………… 12

*Nino de Rivera Lajous v. Sankey,*
    4:13-CV-3070 (D.Neb.) ………………………………………………… 17

*PCTV Gold, Inc. v. SpeedNet, LLC,*
    508 F.3d 1137 (8th Cir. 2007) ……………………………………… 7, 16

*People v. Bounsari,*
    915 N.Y.S.2d 921 (N.Y. City Ct. 2011) ………………………………… 9

*People v. Rappard,*
    28 Cal.Ct.App. 302 (Cal.Ct.App. 1972) ……………………………….. 17

*Phelps-Roper v. Nixon,*
    545 F.3d 685 (8th Cir. 2008) ………………………………………… 15

*Richmond Newspapers v. Virginia,*
    448 U.S. 555 (1980) …………………………………………………… 16

*Russian Volunteer Fleet v. United States,*
    282 U.S. 481 (1931) …………………………………………………… 9

*Shrink Arkansas Government PAC v. Adams,*
    151 F.3d 763 (8th Cir. 1998) ………………………………………… 13

*Sierra Club v. United States Army Corps of Engineers,*
    645 F.3d 978 (8th Cir. 2011) ………………………………………… 6

*State of Washington v. Ibrahim,*
    164 Wn.App. 503 (Wash. App. Div. 3,  2011) ……………………………… 11

*Takahashi v. Fish & Game Commission,*
    334 U.S. 410 (1948) …………………………………………………… 8

*United States v. Boffil-Rivera,*
    2008 U.S. Dist. LEXIS 84633 (S.D. Fla. Aug. 12, 2008) ……………………… 9

*United States v. Carolene Products Co.,*
    304 U.S. 144 (1938) …………………………………………………… 8

iv

*United States v. Flores-Higuera,*
    2011 U.S. Dist. LEXIS 84934 (N.D.Ga. July 6, 2011) ............................... 10

*United States v. Huitron-Guizar,*
    678 F.3d 1164 (10th Cir. 2012) ............................................................... 9

*United States v. Verdugo-Urquidez,*
    494 U.S. 259 (1990) ..................................................................... 7, 10

*United States ex rel. Turner v. Williams,*
    194 U.S. 279 (1904) ........................................................................ 7

*Winter v. NRDC, Inc.,*
    555 U.S. 7 (2008) ........................................................................... 6

*Wong Wing v. United States,*
    163 U.S. 228 (1896) ........................................................................ 9

*Yick Wo v. Hopkins,*
    118 U.S. 356 (1886) ........................................................................ 8

*Zadvydas v. Davis,*
    553 U.S. 678 (2001) ........................................................................ 9

<u>Constitutional Provisions</u>

U.S. Const. amend. II ................................................................ *passim*

U.S. Const. amend. XIV................................................................ *passim*

<u>Statutes, Rules, and Ordinances</u>

Arkansas Statute A.C.A. § 5-4-401 ................................................... 2

Arkansas Statute A.C.A. § 5-73-120 ............................................... 2, 4

Arkansas Statute A.C.A. § 5-73-309(1) ........................................ *passim*

Arkansas Statute A.C.A. § 5-73-313(a)(2) ........................................... 2

Other Authorities

11A Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 2948.1
(2d ed. 1995) ..................................................................................... 14

T. Alexander Aleinikoff, *Semblances of Sovereignty: The Constitution, the State,
and American Citizenship* 173 (2002) ……………………………….. 10, 11

Gerald M. Rosberg, *The Protection of Aliens from Discriminatory Treatment by the
National Government*, 1977 Sup. Ct. Rev. 275, 337 (1978) …………………….10

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

### *PRELIMINARY STATEMENT*

Arkansas Statute A.C.A. § 5-73-309(1), which denies otherwise-qualified legal aliens the ability to obtain an endorsement to bear concealable firearms for public carrying, flatly violates the Plaintiffs' Second Amendment rights to keep and bear arms. Also, because otherwise-qualified United States citizens are not restricted from obtaining a concealed carry endorsement in Arkansas, Plaintiffs' right to equal protection of the law under the Fourteenth Amendment is being violated. The deprivations of constitutional rights subject Plaintiffs to irreparable harm, and is such a clear-cut unconstitutionally-inflicted harm that Plaintiffs are likely to succeed on the merits by the conclusion of this litigation. The State's law, if not preliminarily enjoined, also poses an immediate threat to public safety, as an entire class of Arkansas residents has been and continues to be wrongfully denied the right and ability the full ability to defend their persons from criminal attack. Arkansas has no valid interest in completely banning legal aliens from registering concealable firearms for public carrying when citizens are not so banned. Therefore, the balance of interests falls heavily on Plaintiffs' side, and preliminary injunctive relief is warranted and appropriate.

## STATEMENT OF FACTS

A.   *Arkansas's Ordinance Bans Legal Aliens from Concealable Firearm*

*Registration*

The State of Arkansas requires that its residents who wish to obtain a license

to carry a concealed handgun ("CCL") must apply to the Director of the Department

of Arkansas State police, in POT's case this is the Defendant WITT.

A.C.A. § 5-73-309 provides in pertinent part:

> The Director of the Department of Arkansas State Police
> shall issue a license to carry a concealed handgun if the
> applicant:
>
> (1) Is a citizen of the United States . . .
>
> A.C.A. § 5-73-313 provides for the renewal of a concealed carry
> permit, but only if the applicant provides "[a] verified statement
> that the licensee remains qualified pursuant to the criteria
> specified in §§ 5-73-308(a) **and 5-73-309.**" (Emphasis added.)

A.C.A. § 5-73-313(a)(2).

A.C.A. § 5-73-120 provides in pertinent part:

> (a) A person commits the offense of carrying a weapon if
> he or she possesses a handgun, knife, or club on or about
> his or her person, in a vehicle occupied by him or her, or
> otherwise readily available for use with a purpose to
> employ the handgun, knife, or club as a weapon against a
> person.
>
> . . .
>
> (d) Carrying a weapon is a Class A misdemeanor.

A.C.A. § 5-4-401 provides in relevant part:

2

(b) A defendant convicted of a misdemeanor may be sentenced according to the following limitations:

(1) For a Class A misdemeanor, the sentence shall not exceed one (1) year.

These Code sections prohibit Pot and all other legal aliens residing in Arkansas from obtaining a concealed carry license, and therefore from the public concealed carry of firearms for self-defense.

It is unclear what Arkansas's claimed purpose was for enacting this prohibition, which serves solely to discriminate against Arkansas's qualified legal alien population, including Pot and members of SAF, though there is no purpose Arkansas can offer that passes constitutional muster.

B.   *The Registration Prohibition's Impact on Pot and Similarly-Situated Arkansas Residents.*

Plaintiff Pot is 52 years old, and a citizen of the Netherlands residing with his family in Eureka Springs, Arkansas, and who has done so since 1986. Pot received his permanent resident visa (a/k/a "green card") in 1984. Prior to that Pot was on a tourist visa, which he had briefly until he married his wife in New Orleans, Louisiana, who was then a Masters student at Tulane. Pot has been self-employed in the area of construction, woodworking and restoration in Eureka Springs for twenty years. In sum, he has many solid connections to the State of Arkansas and the Eureka Springs area, including his wife and the two of his three children who still reside in the area (*See* ¶1 of Declaration of Martin Pot, attached hereto).

3

Pot is allowed to possess a handgun in Arkansas only in his house or on his property (per A.C.A. § 5-73-120(c)(1)), or under certain circumstances while on a "journey" (per A.C.A. § 5-73-120(c)(4), which is defined by A.C.A. § 5-73-120(b)(3) as travel beyond the person's county of residence), but is prohibited by A.C.A. § 5-73-309(1) from obtaining a concealed carry permit, and thus generally carrying a handgun in a concealed manner for self-defense (*See* ¶2 of Pot Declaration).

Pot would carry a loaded and functional concealed handgun in public for self-defense, but he refrains from doing so because he fears arrest, prosecution, fine, and imprisonment as he understands it is unlawful for a non-citizen to carry a concealed handgun in Arkansas (*See* ¶5 of Pot Declaration).

In August, 2013, Pot was notified by the Arkansas State Police that his then-current and valid concealed carry permit was not being renewed because Pot is not a citizen. This is despite the fact that for years Pot lawfully possessed, and renewed, a concealed carry permit without incident until A.C.A. § 5-73-309(1) took effect. Therefore, Pot's concealed carry permit application renewal was denied (*See* ¶3 of Pot Declaration).

Defendant Witt is the Director of the Arkansas State Police. In Witt's official capacity, he is responsible for enforcing certain of Arkansas's laws, customs, practices, and policies, specifically including A.C.A. § 5-73-309(1). In that capacity, Witt is presently enforcing the laws, customs, practices and policies complained of in this action. Specifically, Witt is the authority charged with processing and issuing concealed carry permit applications in Arkansas. He is sued in his official

4

capacity (Defendant's Answer to Complaint (Doc. 13) at ¶15).

SAF is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF's membership includes lawfully admitted aliens residing in Arkansas. SAF has over 650,000 members and supporters nationwide, including in the State of Arkansas. POT is a member of SAF. The purposes of SAF include education, research, publishing and legal action focusing on the Constitutional right privately to own and possess firearms. SAF litigates this action on behalf of itself and its members, and as such has organizational standing to pursue this action and Motion (*See* ¶2 of Declaration of Julianne H. Versnel, Director of Operations of SAF, attached hereto).

Pot is a member of SAF (*See* ¶6 of Pot Declaration).

Every day that passes without relief from Arkansas's registration prohibition, all legal aliens residing in Arkansas who are otherwise qualified to obtain a concealed carry endorsement, including Pot and the members and supporters of Plaintiff SAF, are frustrated in their ability to carry handguns in a concealed manner for self-defense, and to enjoy their constitutional rights.

But for the criminal enactments challenged in this complaint, Pot and the qualified legal alien members of SAF would obtain permits and carry concealable firearms for self-defense, but refrain from doing so for fear of arrest, prosecution, fine and incarceration (*See* ¶5 of Pot Declaration; ¶4 of Versnel Declaration).

## *SUMMARY OF ARGUMENT*

Arkansas's prohibition on legal aliens obtaining a concealed carry license for self-defense, regardless of said legal alien's qualifications to do so, unquestionably violates the constitutional guarantees of keeping arms and equal protection under the laws, as do any other of Arkansas's various ordinances that, regardless of their validity as generally applied, undeniably frustrate constitutionally-secured rights of concealed handgun possession.

Considering the certainty of success on the merits, Plaintiffs are entitled to preliminary injunctive relief. Plaintiffs are suffering, and will continue to suffer, irreparable harm in the absence of injunctive relief, for which there is no adequate remedy at law. Granting Plaintiffs relief cannot injure Defendants. And given the degree to which Arkansas's concealed carry permit prohibition threatens the safety of Plaintiffs, the public interest - already favoring the exercise of fundamental rights - is clearly satisfied by immediately enjoining Arkansas's unconstitutional practices.

## *ARGUMENT*

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008).

Similarly, the Eighth Circuit acknowledged and evaluated these same four elements in *Sierra Club v. United States Army Corps of Engineers*, 645 F.3d 978,

989-997 (8th Cir. 2011);  *See also PCTV Gold, Inc. v. SpeedNet, LLC*, 508 F.3d 1137,

1143 (8th Cir. 2007).

Plaintiffs easily satisfy all these threshold requirements for obtaining

preliminary injunctive relief, and the balance of interests weigh heavily in their

favor.

I.   THE SECOND AMENDMENT APPLIES TO PLAINTIFF POT AND SAF'S
     LEGAL ALIEN MEMBERS

The question of whether Pot, a lawful alien residing in Arkansas, and SAF's

similarly-situated members enjoy Second and Fourteenth Amendment rights is an

easy one – the Supreme Court has ruled that they do.  ". . . '[T]he people' protected

by the . . . Second [Amendment] . . . refers to a class of persons who are part of a

national community or who have otherwise developed sufficient connection with

this country to be considered part of that community." *United States v. Verdugo-

Urquidez*, 494 U.S. 259, 265 (1990).  That includes those who are legally in the

country. *See United States ex rel. Turner v. Williams*, 194 U.S. 279, 292 (1904).  Of

course, Arkansas acknowledges this to some extent; legal aliens are allowed home

and property firearm possession, and possession while on a "journey."  However,

Arkansas has arbitrarily decided that said legal aliens shall not be permitted to

obtain a concealed carry license, which would enable Pot and others similarly-

situated to defend themselves in every other circumstance the same as citizens.

"The Fourteenth Amendment provides, 'Nor shall any State deprive any

person of life, liberty, or property, without due process of law; nor deny to any

person within its jurisdiction the equal protection of the laws.'  It has long been

7

settled, and it is not disputed here, that the term 'person' in this context encompasses lawfully admitted resident aliens as well as citizens of the United States and entitles both citizens and aliens to the equal protection of the laws of the State in which they reside." *Graham v. Richardson*, 403 U.S. 365, 371 (1971) (citing *Yick Wo v. Hopkins*, 118 U.S. 356, 369 (1886)).

State action violates equal protection rights if it separates individuals into discrete classes based on citizenship and subjects those individuals to disparate treatment. *Graham*, 403 U.S. at 371, 377. A classification based on an individual's status as an alien is "inherently suspect and subject to close judicial scrutiny." *Id.* at 372. "Aliens as a class are a prime example of a 'discrete and insular' minority (*see United States v. Carolene Products Co.*, 304 U.S. 144, 152-153, n. 4 (1938)) for whom such heightened judicial solicitude is appropriate." *Graham*, 403 U.S. at 372. "The Fourteenth Amendment and the laws adopted under its authority thus embody a general policy that all persons lawfully in this country shall abide 'in any state' on an equality of legal privileges with all citizens under non-discriminatory laws." *Id.* at 374 (quoting *Takahashi v. Fish & Game Commission*, 334 U.S. 410, 420 (1948)).

Further, legal aliens in the United States have been extended the same Constitutional rights as citizens in a variety of other situations for more than one hundred years. *See*, *e.g.*, *Kwong Hai Chew v. Colding*, 344 U.S. 590, 596 (1953) (resident alien is a "person" within the meaning of the Fifth Amendment); *Bridges v. Wixon*, 326 U.S. 135, 148 (1945) (resident aliens have First Amendment rights);

*Russian Volunteer Fleet v. United States*, 282 U.S. 481 (1931) (Just Compensation

Clause of Fifth Amendment); *Wong Wing v. United States*, 163 U.S. 228, 238 (1896)

(resident aliens entitled to Fifth and Sixth Amendment rights).  Even illegal aliens

then-presently in the Country receive protection under the Fourteenth

Amendment's Due Process Clause.  (*See*, *e.g.*, *Zadvydas v. Davis*, 553 U.S. 678, 693

(2001)).

      The Tenth Circuit addressed the issue of the constitutionality of 18 U.S.C. §

922(g)(5) as applied to an illegal alien, an issue not confronted here.  *United States*

*v. Huitron-Guizar*, 678 F.3d 1164 (10th Cir. 2012).  However, in discussing the post-

*Heller* litigation, the Court noted as to lawful permanent residents like Pot:

> The thrust of *Heller*, or at least the intended thrust of
> much post-*Heller* litigation, has been to broaden the right.
> Recently some state statutes that burden gun possession
> by lawful permanent aliens (which § 922(g)(5) does not
> cover) have been declared invalid under the Equal
> Protection Clause, which requires that strict scrutiny be
> applied to state laws that impose restrictions based on
> alienage. *See*, *e.g.*, *People v. Bounsari*, 31 Misc. 3d 304,
> 915 N.Y.S.2d 921, 924 (N.Y. City Ct. 2011) (invalidating
> New York statute dating from 1905, prohibiting non-
> citizens from possessing a dangerous weapon, and noting
> related decisions in Michigan, Nevada, California);
> *Fletcher v. Haas*, [851 F. Supp. 2d 287, 301] (D.Mass.
> Mar. 30, 2012) (holding that Massachusetts's firearm
> regime contravenes the Second Amendment as applied to
> lawful permanent residents).

*Huitron-Guizar*, 678 F.3d at 1170.  Other Courts have also ruled along a line

dividing the lawful permanent resident from the illegal alien, where the lawful

resident possesses Second Amendment rights and the illegal alien does not.  *See*,

*e.g.*, *United States v. Boffil-Rivera*, 2008 U.S. Dist. LEXIS 84633 at *32 (S.D. Fla.

Aug. 12, 2008) ("Congress has made a policy judgment, as it has in numerous other statutes, that *unlike citizens and legal residents*, illegal aliens by their very unauthorized nature and lack of allegiance to the government of the United States pose a greater risk to abuse firearms.") (Emphasis added.); *See also United States v. Flores-Higuera,* 2011 U.S. Dist. LEXIS 84934 at *5 (N.D. Ga. July 6, 2011) ("Because Defendant is not a citizen, or at the least, a lawful resident with ties to the community, the Court concludes that he is not a member of the "political community" whose rights are protected by the Second Amendment.)"

The Court concluded in *Fletcher v. Haas*, 851 F. Supp. 2d 287 (D.Mass., 2012):

> With this framework in mind, I find no justification for refusing to extend the Second Amendment to lawful permanent residents. They have necessarily "developed sufficient connection with this country to be considered part of [the] community." *Verdugo-Urquidez*, 494 U.S. at 265.  Professor Rosberg has identified as "the traditional premise of the country's immigration policy—that resident aliens are virtually full-fledged members of the American community, sharing the burdens of membership as well as the benefits." Gerald M. Rosberg, *The Protection of Aliens from Discriminatory Treatment by the National Government*, 1977 Sup. Ct. Rev. 275, 337 (1978). And then-Professor Aleinikoff, a former General Counsel of the Immigration and Nationalization Service, observed a decade ago,
>
> "Permanently residing aliens live and function much like citizens. They hold jobs, attend churches, send their children to school, and pay taxes. Children they give birth to in the United States are American citizens. From this perspective, the fact that aliens are not required by law to apply for citizenship is not surprising; in day-to-day terms, permanently residing aliens and citizens are already largely indistinguishable."

*Fletcher*, 851 F. Supp. 2d at 301 (quoting T. Alexander Aleinikoff, *Semblances of Sovereignty: The Constitution, the State, and American Citizenship* 173 (2002)). Thus, the Court in *Fletcher* determined that the plaintiffs in that case, two lawful permanent resident aliens, were entitled to Second Amendment rights. *Fletcher*, 851 F. Supp. 2d at 301-02. *See also State of Washington v. Ibrahim*, 164 Wn. App. 503, 514 (Wash. App. Div. 3,  2011) (legal alien's conviction for unlawful possession of firearm reversed when statute barring lawful aliens from possessing firearms found to unconstitutionally deny defendant 14th Amendment right to equal protection of law).

The Seventh Circuit has compared the analysis of infringements of Second Amendment rights to those of infringements of First Amendment rights (*See Ezell v. City of Chicago***,** 651 F.3d 684 (7th Cir. 2011) (ban on gun ranges within State limits ruled unconstitutional)**.** According to *Ezell*, infringements on the core Second Amendment right of possession for self-defense must satisfy a level of scrutiny approaching strict scrutiny. *Id*. at 708. This means Arkansas's prohibition, ". . . a severe burden on the core Second Amendment right of armed self-defense will require an extremely strong public-interest justification and a close fit between the government's means and its end." *Id*. Though the Eighth Circuit has yet to consider the specific issue raised in this case, the *Ezell* decision is comprehensive, well-considered, and its holdings and reasoning should be followed by this Court. Doing so, it is evident Arkansas cannot defend its arbitrary ban.  Further, under any level of scrutiny (rational basis not even being up for consideration under

11

*District of Columbia v. Heller*, 128 S. Ct. 2783, 2818, fn 27 (2008)), Arkansas's statute fails.

Further, Arkansas does not allow the open carrying of firearms except for the aforementioned exceptions. Therefore, without a concealed carry license, legal aliens are totally prohibited from exercising Second Amendment rights except on their property or while in the act of traveling distances. The Seventh Circuit, in *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012), held the ban of the public carrying of firearms violated the Second Amendment and was unconstitutional:

> Both *Heller* and *McDonald* do say that "the need for defense of self, family, and property is most acute" in the home, *id.* at 3036 (emphasis added); 554 U.S. at 628, but that doesn't mean it is not acute outside the home. *Heller* repeatedly invokes a broader Second Amendment right than the right to have a gun in one's home, as when it says that the amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." 554 U.S. at 592. Confrontations are not limited to the home.

*Id.* at 935-36.

While *Moore* almost entirely addressed the public carry issue in terms of concealed carry, the Court acknowledged the State of Illinois could instead implement open carry. *Id.* at 938.

Plaintiffs are not arguing here that there should be open carry (either in addition to, or as a substitute for, concealed carry), only that legal aliens enjoy Second Amendment rights, which includes the right to carry firearms in public for self-defense. If legal aliens (like everyone else) cannot generally carry openly, then

12

they cannot also be denied the right to concealed carry, which is the manner of public carrying exercised and enjoyed by citizens.

## II.   PLAINTIFFS WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF PRELIMINARY INJUNCTIVE RELIEF.

Pot, and other members and supporters of SAF, enjoy a fundamental right to keep and bear arms.  *McDonald v. City of Chicago*, 130 S. Ct. 3020, 3042 (2010) (majority op.) (Alito, J.).  "[T]he inherent right of self-defense has been central to the Second Amendment right."  *Heller*, 128 S. Ct. at 2817.  The denial of constitutional rights, even if such deprivation were temporary, constitutes irreparable harm for purposes of granting injunctive relief (*See*, *e.g.*, *Lowry v. Watson Chapel School District*, 540 F.3d 752, 762 (8th Cir. 2008) (First Amendment freedom of expression) (citing *Elrod v. Burns*, 427 U.S. 347, 373, (1976)); *See also Shrink Arkansas Government PAC v. Adams*, 151 F.3d 763, 764 (8th Cir. 1998) (unconstitutional campaign contribution limits as violative of freedom of speech).

As noted above, in *Ezell* the Seventh Circuit favorably compared the fundamental freedoms of the Second Amendment to those fundamental freedoms of the First Amendment and deemed the deprivation of either to be irreparable harm. The *Ezell* Court held that "[t]he loss of a First Amendment right is frequently presumed to cause irreparable harm based on 'the intangible nature of the benefits flowing from the exercise of those rights; and the fear that, if those rights are not jealously safeguarded, persons will be deterred, even if imperceptibly, from exercising those rights in the future.' . . .  The Second Amendment protects similarly intangible and unquantifiable interests.  *Heller* held that the Amendment's central

13

component is the right to possess firearms for protection. (cite omitted). Infringements of this right cannot be compensated by damages." *See Ezell*, 651 F.3d at 699.

Put simply, if A.C.A. § 5-73-309(1) is not struck down, legal aliens including the plaintiffs will continue to be unconstitutionally frustrated in their ability to exercise their fundamental Second Amendment rights.

Considering that the Second Amendment exists to secure the right of armed self-defense, the inability for legal aliens to defend themselves against violence in a manner allowed not only by the vast majority of the United States, but also allowed to Arkansas residents who are U.S. citizens, also causes a profound loss of a sense of one's security, to say nothing of the irreparable harm resulting from a successful criminal attack.  Thus, the irreparable harm flowing from any delays in obtaining relief is palpable.

Additionally, the deprivation of the right of lawful resident aliens to be treated equally under the law, and instead being discriminated due to their alienage classification, in violation of the Equal Protection Clause of the Fourteenth Amendment, is an irreparable harm that continues so long as the offending statute is in place.  Equal protection "is essentially a direction that all persons similarly situated shall be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985).  "When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001) (citing 11A Charles Alan Wright *et al.*,

Federal Practice and Procedure § 2948.1 (2d ed. 1995)); *See also Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984); *Ezell*, 651 F.3d at 699.

Under both the Second and Fourteenth Amendments, Plaintiffs are currently suffering the irreparable harm of the deprivation of their constitutional rights, and will continue to suffer said irreparable harm every day A.C.A. § 5-73-309(1) is not enjoined.

III.   TRADITIONAL LEGAL REMEDIES ARE INADEQUATE TO RELIEVE THE HARM OF THE BAN ON REGISTRATION BY LEGAL ALIENS.

There is no way to quantify, in terms of money damages, the inability to engage in protected Second Amendment activity such as the concealed carry of a firearm such as a handgun for self-defense, or the discrimination of being classified solely based on alienage in violation of Fourteenth Amendment Equal Protection rights.  The infringement of constitutional rights is frequently considered to be beyond quantification with money damages.  This includes infringements of Second Amendment rights.  *See Ezell*, 651 F.3d at 699; *See also*, *e.g.*, *Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008) (First Amendment free speech rights).

No legal remedies will be available to legal aliens whose concealed carry licenses will be refused because non-citizens are denied Second Amendment rights or the equal protection of Arkansas's firearms laws.  And quite obviously, no legal remedies will suffice to compensate those killed or injured for the inability to lawfully possess concealed defensive arms, owing to Arkansas's ban.

15

IV.    PLAINTIFFS WILL PREVAIL ON THE MERITS, AS ARKANSAS'S BAN
       ON CONCEALED CARRY PERMITS VIOLATES THEIR SECOND AND
       FOURTEENTH AMENDMENT RIGHTS.

*Possession of Handguns for Lawful Purposes Including Self-Defense Lies at the Core
of the Second Amendment.*

"In considering the likelihood of the movant prevailing on the merits, a court

does not decide whether the movant will ultimately win.  While 'an injunction

cannot issue if there is no chance on the merits,' *Mid-America Real Estate Co. v.

Iowa Realty Company*, 406 F.3d 969, 972 (8th Cir. 2005), the Eighth Circuit has

rejected a requirement as to a 'party seeking preliminary relief prove a greater than

fifty per cent likelihood that he will prevail on the merits.'"  *PCTV Gold, Inc.*, 508

F.3d at 1143 (quoting *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109,

113 (8th Cir. 1981)).  In this case, Plaintiffs should certainly win on the merits, and

the likelihood certainly rises above a "preponderance" standard.

"[T]he Court has acknowledged that certain unarticulated rights are implicit

in enumerated guarantees . . . fundamental rights, even though not expressly

guaranteed, have been recognized by the Court as indispensable to the enjoyment of

rights explicitly defined." *Richmond Newspapers v. Virginia*, 448 U.S. 555, 579-80

(1980).  Unsurprisingly, the Supreme Court has noted that the enumerated,

articulate right to possess a firearm for lawful purposes, most notably for self-

defense, are fundamentally core to the Second Amendment.  *McDonald*, 130 S.Ct. at

3043.

In *Heller*, neither the D.C. Circuit nor the Supreme Court bothered to engage

in any balancing test or other extended analysis before striking down Washington,

16

D.C.'s ban on the possession of functional firearms for self-defense, as that law literally contradicted a "core" aspect of Second Amendment rights. *Heller*, 128 S. Ct. at 2818. A complete ban on concealed possession of firearms for an entire class of legal Arkansas residents, based on nothing more than citizenship status, will meet the same fate.

In *Nino de Rivera Lajous v. Sankey*, 4:13-CV-3070 (D.Neb.), the District Court entered a permanent injunction against an identically-discriminatory restriction (*See* Order of Final Judgment in 4:13-CV-3070 dated October 15, 2013, attached hereto).

Further, In *Jackson v. Eden* [prev. *Hubbard*], 1:12-CV-421 (D.NM), a New Mexico statutory restriction identical to that challenged here was preliminarily enjoined as a violation of Fourteenth Amendment equal protection grounds. The Court stated "[a]ny classification which treats all aliens as dangerous and all United States citizens as trustworthy rests upon a very questionable basis." *Id.* at Doc.42, p.18 (quoting *People v. Rappard*, 28 Cal.Ct.App. 302, 305 (Cal.Ct.App. 1972); *Fletcher*, 851 F.Supp.2d at 303 ("Any classification based on the assumption that lawful permanent residents are categorically dangerous and all American citizens by contrast are trustworthy lacks even a reasonable basis.")). The *Jackson* Court concluded: "Defendant Hubbard has failed to establish that a legal permanent resident alien such as Mr. Jackson poses a greater risk of danger by

virtue of his or her status alone, than do citizens, with respect to the carrying of concealed weapons." *Jackson*, 1:12-CV-421 at Doc.42, p.24).[1]

Arkansas's Ordinance strongly fails all four preliminary injunction factors. It is not within the State's constitutional power to ban otherwise qualified legal alien residents from possessing concealed firearms, including handguns which have been expressly deemed constitutionally protected by the Supreme Court (*See Heller*, 128 S.Ct. at 2817-18 ("Under any of the standards of scrutiny that we have applied to enumerated constitutional rights, banning from the home 'the most preferred firearm in the nation to 'keep' and use for protection of one's home and family,' would fail constitutional muster.") - doing so violates the Second and Fourteenth Amendments. The State has no interest, let alone an extremely strong one, in denying all legal aliens the fundamental Second and Fourteenth Amendment rights of handgun possession, especially in the same manner available to citizens. In light of the above, a preliminary injunction against the enforcement of A.C.A. § 5-73-309(1) should be immediately entered.

V.    THE BALANCE OF INTERESTS FAVOR IMMEDIATE INJUNCTIVE RELIEF.

The Plaintiffs are certain to prevail on the merits. Absent relief they will continue to suffer irreparable injury in the loss of Second and Fourteenth Amendment rights, if not actual physical harm. The State has no legitimate interest in the prohibition; and the public interest strongly favors equal protection

---

[1] Plaintiffs' Motion for Permanent Injunction in *Jackson* is currently pending.

of the law, and the respecting of fundamental rights, to say nothing of the ability of all qualified Arkansas residents to defend themselves.  The balance of interests could not more completely tilt in favor of immediate injunctive relief.

### CONCLUSION

Arkansas cannot deny Second and Fourteenth Amendment rights to an entire class of its residents.  Plaintiffs respectfully request that the motion for preliminary injunctive relief be granted.

Dated: March 20, 2014                          Respectfully submitted,


By: _____/s/ David G. Sigale_____
                                                                David G. Sigale

                                                        Attorney for Plaintiff


David G. Sigale, Esq. (#6238103 (IL))
LAW FIRM OF DAVID G. SIGALE, P.C.
739 Roosevelt Road, Suite 304
Glen Ellyn, IL 60137
630.452.4547
dsigale@sigalelaw.com

19

**<u>CERTIFICATE OF ATTORNEY AND NOTICE OF ELECTRONIC FILING</u>**

The undersigned certifies that:

      1.      On March 20, 2014, the foregoing document was electronically filed with the District Court Clerk *via* CM/ECF filing system;

      2.      Pursuant to F.R.Civ.P. 5, the undersigned certifies that, to his best information and belief, there are no non-CM/ECF participants in this matter.


                                                   /s/ David G. Sigale
                                                 Attorney for Plaintiff