**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF ARKANSAS**

**MARTIN POT and**
**SECOND AMENDMENT FOUNDATION** **PLAINTIFFS**

**v.** **No. 3:13-cv-3102-TLB**

**COLONEL STAN WITT, in his official capacity as Director of the Arkansas State Police** **DEFENDANT**

**DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

## I. INTRODUCTION

Plaintiffs, Martin Pot and the Second Amendment Foundation ("SAF"), filed this action alleging the unconstitutionality of Arkansas Code Annotated § 5-73-309(1). Plaintiffs contend that the statute's citizenship requirement for a concealed weapon permit violates the Second Amendment and Fourteenth Amendment to the United States Constitution. Plaintiffs now seek an extraordinary remedy, a preliminary injunction. This Court should deny plaintiffs' motion because plaintiffs have failed to allege (much less prove) facts sufficient to meet all four of the *Dataphase* factors for obtaining a preliminary injunction. First, plaintiffs are unlikely to succeed on the merits of their Second Amendment and Fourteenth Amendment claims. Particularly, courts have held that there is no fundamental right to carry a concealed weapon under the Second Amendment. Moreover, although plaintiffs' equal protection claim does not differentiate between a facial challenge and an as-applied challenge, plaintiffs cannot establish a likelihood of succeeding on the merits either way. On the one hand, plaintiffs' facial challenge fails because plaintiffs cannot establish that the challenged statute is unconstitutional in all applications. On the other hand, a rational basis review is applicable to plaintiffs' as-applied challenge because

the statute addresses the constitutional prerogatives of the State (namely, the regulation of concealed weapons and public safety), and the statute's prohibition of non-citizens from carrying concealed weapons is a rational means to promote the legitimate end of public safety. Even if the statute if subjected to strict scrutiny, however, the law still achieves the compelling government interest of protecting the public from those individuals carrying concealed weapons whose criminal backgrounds cannot be determined by the Arkansas State Police through the least restrictive means available.

Second, plaintiffs cannot demonstrate a threat of irreparable harm. Plaintiffs' stated basis for fearing harm—a profound loss of security—is not supported by the facts. The specific statute at issue in this case does not prohibit firearms within the home. Third and fourth, the State and its residents have an interest in safety, which will be threatened if this Court grants the preliminary injunction. The defendant will be required to issue concealed weapon permits to potentially unqualified candidates without an adequate background check. The inability of the defendant to protect the State of Arkansas' residents far outweighs the threatened harm to plaintiffs. Plaintiffs' motion for a preliminary injunction should be denied for all of the stated reasons.

## II. FACTUAL BACKGROUND

Separate plaintiff, Martin Pot, is a resident of Eureka Springs, Arkansas. Pl.'s Comp. ¶ 1. He is able to possess a firearm in his home, on his property, and while on a journey. *Id.* ¶ 9. Pot alleges that the Arkansas State Police denied Pot's renewal application for a concealed carry permit because Pot is not a citizen. *Id.* ¶ 11.[1] On November 4, 2013, Pot filed a lawsuit under

[1] Defendant did not deny Pot's renewal application. *See* Exhibit "A." Defendant requested additional information related to Pot's renewal application. *Id.* Pot did not provide the

42 U.S.C. § 1983 against Colonel Stan Witt, challenging the constitutionality of Ark. Code Ann. § 5-73-309(1) on two grounds: the Second Amendment and the Equal Protection Clause of the Fourteenth Amendment. The SAF, which maintains members in Arkansas, also challenges the statute on the listed grounds. *Id.* ¶ 12.

The applicable statute contains fourteen qualifications for an applicant applying for a concealed handgun. It reads as follows:

> The Director of the Department of Arkansas State Police shall issue a license to carry a concealed handgun if the applicant:
>
> (1) Is a citizen of the United States;
>
> (2)(A) Is a resident of the state and has been a resident continuously for ninety (90) days or longer immediately preceding the filing of the application . . . ;
>
> (3) Is twenty-one (21) years of age or older;
>
> (4) Does not suffer from a mental or physical infirmity that prevents the safe handling of a handgun and has not threatened or attempted suicide;
>
> (5)(A) Has not been convicted of a felony in a court of this state, of any other state, or of the United States without having been pardoned for conviction and had firearms possession rights restored . . . ;
>
> (6) Is not subject to any federal, state, or local law that makes it unlawful to receive, possess, or transport any firearm, and has had his or her background check successfully completed through the Department of Arkansas State Police and the Federal Bureau of Investigation's National Instant Criminal Background Check System;
>
> (7)(A) Does not chronically or habitually abuse a controlled substance to the extent that his or her normal faculties are impaired . . . ;
>
> (8)(A) Does not chronically or habitually use an alcoholic beverage to the extent that his or her normal faculties are impaired . . .;
>
> (9) Desires a legal means to carry a concealed handgun to defend himself or herself;

---

additional information, but instead, filed this lawsuit. Defendant contends that neither Pot nor the SAF standing to file this suit, as Pot's application was not denied.

(10) Has not been adjudicated mentally incompetent;

(11) Has not been voluntarily or involuntarily committed to a mental institution or mental health treatment facility;

(12) Is not a fugitive from justice or does not have an active warrant for his or her arrest;

(13) Has satisfactorily completed a training course as prescribed and approved by the director; and

(14) Signs a statement of allegiance to the United States Constitution and the Arkansas Constitution.

Ark. Code Ann. § 5-73-309.

Pot and the SAF's complaint asks that this Court declare Ark. Code Ann. § 5-73-309(1) unconstitutional and enter a preliminary injunction and permanent injunction prohibiting its enforcement. They filed a motion for a preliminary injunction on March 20, 2014.

## III. PRELIMINARY INJUNCTION STANDARD

A preliminary injunction is an extraordinary remedy. *Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 705 (8th Cir. 2011); *Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003). Its primary purpose is to maintain the "status quo until a court may grant full effective relief on a final hearing." *Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 490 (8th Cir. 1993). The burden of establishing entitlement to a preliminary injunction is on the movant—in this case, Pott and the SAF. *Roudachevski*, 648 F.3d at 705. The movant seeking a preliminary injunction has the burden of proving **all** the *Dataphase* factors. The four *Dataphase* factors, which this Court must consider in determining whether to grant a preliminary injunction, are (1) the probability that the movant will succeed on the merits, (2) the threat of irreparable harm, (3) the state of the balance between the harm and the injury that

granting the injunction will inflict on the other parties, and (4) the public interest. *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981).

While no single factor is determinative in balancing the equities, "the probability of success factor is the most significant." *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013). There is a strong suggestion that preliminary injunctive relief should be denied absent a showing of a likelihood of success on the merits. *Barrett v. Claycomb*, 705 F.3d 315, 320 (8th Cir. 2013). The Eighth Circuit applies a heightened standard for determining success where the movant seeks to enjoin a state statute. *Planned Parenthood of Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 731-33 (8th Cir. 2008); *see also Edwards v. Beck*, 946 F.Supp.2d 843 (E.D. Ark. 2013). The party seeking to enjoin a state statute must show more than the normal "fair chance" of succeeding; the party must show a "likelihood that he will succeed on the merits." *Rounds*, 530 F.3d at 731-32. The heightened standard requires greater than a fifty percent likelihood of prevailing on the merits. *Id*. at 732-33; *see also Edwards*, 946 F.Supp.2d at 847.

## IV. <u>LEGAL ARGUMENT</u>

### A. This Court Should Deny the Motion for Preliminary Injunction Because Plaintiffs are Unlikely to Succeed on the Merits.

#### i. Plaintiffs' Second Amendment Claim Fails Because there is no Fundamental Right to Carry a Concealed Weapon.

This case does not involve a limitation of a right provided by the Second Amendment because the Second Amendment does not provide a fundamental right to carry a concealed weapon. The Second Amendment "right to possess and carry weapons" is not unlimited. *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008) (stating the "right is not a right to keep and carry any weapon whatsoever, in any manner and for whatever purpose"). One long-standing example of the limitation, as explained by *Heller* Court, is the limitation or prohibition

on carrying concealed weapons. *Id*. at 626; *see also Robertson v. Baldwin*, 165 U.S. 275, 281 (1897) (stating, in dictum, that "the right of the people to keep and bear arms is not infringed by laws prohibiting the carrying of concealed weapons). The *Heller* Court stated as follows:

> Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that ***the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose***. For example, the majority of the 19th-century courts to consider the question ***held that prohibitions on carrying concealed weapons were lawful under the Second Amendment*** or state analogues. Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, ***nothing in our opinion should be taken to cast doubt on longstanding prohibitions*** . . . .

554 U.S. at 626 (emphasis added) (internal citations omitted).

Today's federal courts that have specifically addressed the constitutionality of a concealed weapon restriction have held that the restriction does not violate the Second Amendment consistent with the long-standing prohibitions and the *Heller* court. *See Peterson v. Martinez*, 707 F.3d 1197, 1209 (10th Cir. 2013) (stating that "we first ask whether the Second Amendment provides the right to carry a concealed firearm. We conclude that it does not."); *Kachalsky v. County of Westchester*, 701 F.3d 81 (2nd Cir. 2012) (rejecting plaintiffs' Second Amendment challenge to a concealed weapon statute); *Plastino v. Koster*, 2013 U.S. Dist. LEXIS 58544 (E.D. Mo. April 24, 2013) (rejecting the SAF's argument that a concealed weapon statute infringed upon the Second Amendment right to carry guns for "self-defense"); *Jackson v. King*, Case. No. 2-12-CV-00421 (New Mex. Mar. 30, 2013) (rejecting the SAF's argument that a concealed weapon statute infringed upon the Second Amendment right to carry guns for "self-defense); *Richards v. County of Yolo*, 821 F.Supp.2d 1169, 1174 (E.D. Cal. 2011) (holding "the Second Amendment does not create a fundamental right to carry a concealed weapon in public."); *Dorr v. Weber*, 741 F.Supp.2d 993, 1005 (N.D. Iowa 2010) (holding "a right to carry a concealed weapon under the Second Amendment has not been recognized to date); *Gamble v.*

*United States*, 30 A.3d 161, 164-66 (D.C. 2011) (stating there is no Second Amendment right to carry a concealed weapon).

In *Peterson*, an out-of-state resident challenged the State of Colorado's licensing regime for a concealed weapon, alleging that the statute violated his Second Amendment right to bear arms. The United States Court of Appeals for the Tenth Circuit directly addressed "whether the Second Amendment provides the right to carry a concealed firearm." 707 F.3d at 1197. The Court found that the answer was no after an exhaustive review of the Supreme Court's jurisprudence including its holding in *Heller*. The Court found as follows:

> Although the *Robertson* Court's statement does not qualify as recent, the Supreme Court's contemporary Second Amendment jurisprudence does nothing to enfeeble—but rather strengthens—the statement that concealed carry restrictions do not infringe the Second Amendment right to keep and bear arms. As did *Robertson*, the *Heller* opinion notes that, "[l]ike most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." 554 U.S. at 626, 128 S.Ct. 2783. As an example of the limited nature of the Second Amendment right to keep and carry arms, the Court observed that "the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues." *Id*. And the Court stressed that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions." *Id*.
>
> There can be little doubt that bans on the concealed carrying of firearms are longstanding. In *Heller*, the Supreme Court cited several early cases in support of the statement that most nineteenth century courts approved of such prohibitions. *See Nunn v. State,* 1 Ga. 243, 251 (1846) ("[S]o far as the act of 1837 seeks to suppress the practice of carrying certain weapons secretly, that it is valid, inasmuch as it does not deprive the citizen of his natural right of self-defence, or of his constitutional right to keep and bear arms." (emphasis omitted)); *State v. Chandler*, 5 La. Ann. 489, 490 (1850) ( "This is the right guaranteed by the Constitution of the United States, and which is calculated to incite men to a manly and noble defence of themselves, if necessary, and of their country, without any tendency to secret advantages and unmanly assassinations."); *see also Robertson,* 165 U.S. at 281-82, 17 S.Ct. *326* ("[T]he right of the people to keep and bear arms ... is not infringed by laws prohibiting the carrying of concealed weapons."). Dissenting in *McDonald*, Justice Breyer further discussed the history of concealed carry regulations. *See* 130 S.Ct. at 3132 (Breyer, J., dissenting) (citing to an 1847

Virginia statute that barred the carrying of pistols "hidden from common observation"); *id*. at 3134 (noting that "[f]ifteen States banned the concealed carry of pistols and other deadly weapons" during the post-Civil War era). We note, however, that this view was not unanimous. *See Bliss v. Commonwealth,* 12 Ky. 90, 91-92 (1822) (striking a ban on concealed carry as inconsistent with a state constitutional provision). Nevertheless, "[m]ost states enacted laws banning the carrying of concealed weapons" in the nineteenth century. *Kachalsky v. Cnty. Of Westchester*, 701 F.3d 81, 95 (2nd Cir. 2012); *see also id*. at 95 n. 21 (collecting statutes).

Scholars have also noted the long history of concealed carry restrictions in this country. *See* David T. Hardy, *The Rise & Demise of the "Collective Right" Interpretation of the Second Amendment*, 59 Clev. St. L.Rev. 315, 333 (2011) ("Beginning in the 1820s, State courts faced issues arising from the interaction of early weapons laws, chiefly bans on concealed carry. Most rulings upheld the bans...." (footnote omitted)); Eugene Volokh, *Implementing the Right to Keep and Bear Arms for Self-Defense: An Analytical Framework and a Research Agenda*, 56 U.C.L.A. L.Rev. 1443, 1516 (2009) ("This tradition [of prohibiting the concealed carry of firearms] does indeed go back to 1813 and the following decades, at least in some Southern and border states, as well as in Indiana, and by the end of the 19th century the constitutionality of such bans had become pretty broadly accepted." (footnote omitted)); Adam Winkler, *Heller's Catch-22*, 56 U.C.L.A. L. Rev. 1551, 1569 (2009) ("The Court was correct to recognize the long historical pedigree of bans on concealed carry, which date back much further than the other exceptions recognized by the Court."). Given this lengthy history of regulation, restrictions on concealed carry qualify as "longstanding" and thus "presumptively lawful regulatory measures." *Heller*, 554 U.S. at 626 & n. 26, 128 S.Ct. 2783; *see also National Rifle Association of America, Inc. v. Bureau fo Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 196 (5th Cir. 2012) (" *Heller* demonstrates that a regulation can be deemed 'longstanding' even if it cannot boast a precise founding-era analogue.... *Heller* considered firearm possession bans on felons and the mentally ill to be longstanding, yet the current versions of these bans are of mid–20th century vintage." (citations omitted)).

We agree with the Fifth Circuit that in applying the two-step approach to Second Amendment claims, we consider at the first step "whether the law harmonizes with the historical traditions associated with the Second Amendment guarantee." Nat'l Rifle Ass'n, 700 F.3d at 194 (citations omitted). As the foregoing demonstrates, concealed carry bans have a lengthy history. *See Kachalsky*, 701 F.3d at 95 & n. 21 (noting that most states banned concealed carry in the nineteenth century). Given the dicta in *Robertson*, 165 U.S. at 281-82, 17 S.Ct. 326, and the Supreme Court's admonition in *Heller* that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions," 554 U.S. at 626, 128 S.Ct. 2783, we conclude that Peterson's Second Amendment claim fails at step one of our two-step analysis: **the Second Amendment does not confer a right to carry concealed weapons**.

707 F.3d at 1209 (emphasis added).

Plaintiffs cannot establish a violation of the Second Amendment because there is no fundamental right to carry a concealed weapon. Neither the United States Supreme Court nor any other federal court directly addressing a concealed weapon statute have held that the Second Amendment provides a fundamental right to carry a concealed weapon, yet plaintiffs, without support, state that the statute "flatly violates the Plaintiffs' Second Amendment rights to keep and bear arms." Pls' Motion, p. 7. Plaintiffs' entire theory is premised on cases, such as *Heller*, stating that an individual has a right to carry "firearms in public for self-defense." Plaintiffs' theory is flawed for two reasons. First, plaintiffs' theory unsuccessfully attempts to liken the holdings to "concealed weapons" without any legal support. As held in *Peterson*, "the Supreme Court's contemporary Second Amendment jurisprudence does nothing to enfeeble—but rather strengthens—the statement that concealed carry restrictions do not infringe the Second Amendment right to keep and bear arms." 707 F.3d at 1208. Second, the statute does not address plaintiffs' ability to openly carry firearms in public. Plaintiffs cannot establish a likelihood of succeeding on their Second Amendment claim because the concealed carry of a handgun does not implicate any Second Amendment right, and thus, a preliminary injunction is not warranted and should be denied.

**ii. Plaintiffs' Facial Challenge Pursuant to the Equal Protection Clause of the Fourteenth Amendment Fails Because Plaintiffs Cannot Demonstrate that the Law is Unconstitutional in all its Applications**.

Plaintiffs cannot succeed in a facial challenge because they cannot establish that no set of circumstances exists under which the statute would be valid. A facial challenge to a statute is the most difficult challenge to successfully make because "a plaintiff can only succeed in a facial challenge by 'establish[ing] that no set of circumstances exists under which the [statute] would

be valid.'" *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008); *see also TCF Nat'l Bank v. Bernanke*, 643 F.3d 1158, 1163 (8th Cir. 2011); *Wersal v. Sexton*, 613 F.3d 821, 831 (8th Cir. 2010). Stated differently, a party bears the burden of proving that the "law is unconstitutional in all of its applications." *Wash. State*, 552 U.S. at 449. The Arkansas statute excludes all non-citizens from applying for a concealed weapon permit. A facial challenge, therefore, cannot be limited to determining whether the statute discriminates against permanent aliens as alleged in the complaint. The statute could be constitutionally applied if the applicant were an illegal alien who otherwise satisfied the statute's remaining requirements. *See* 18 U.S.C. § 922 (making it a federal crime for an illegal alien to possess a firearm). Thus, the facial attack against the statute fails because plaintiffs cannot demonstrate that "the law is unconstitutional in all its applications."

**iii. Plaintiffs' As-applied Challenge Pursuant to the Equal Protection Clause of the Fourteenth Amendment Fails Because the Statute is Constitutional Under Either a Rational Basis Standard or a Strict Scrutiny Standard.**

Plaintiffs' as-applied equal protection claim fails because the statute easily overcomes a rational basis review or a strict scrutiny review. The prohibition of non-citizens from carrying concealed weapons has a rational means to promote the legitimate end of public safety. Even if subjected to strict scrutiny, the statute achieves the compelling government interest of protecting the public from those individuals carrying concealed weapons whose criminal backgrounds cannot be determined by defendant.

**a. The Statute is Constitutional Pursuant to the Applicable Standard, Rational Basis.**

**i. The Rational Basis Standard Applies to Plaintiffs' Equal Protection Claim Because the Statute is Firmly Within the State's Constitutional Perogatives.**

A statute that neither "burdens a fundamental right nor targets a suspect class" is not subject to strict scrutiny and may be upheld so long as the classification rationally relates to a legitimate government interest. *Romer v. Evans*, 517 U.S. 620, 631 (1996). This case neither involves a fundamental right nor targets a suspect class. As discussed above, the Second Amendment does not create a fundamental right to carry a concealed weapon. And, "[s]tate laws discriminating on the basis of alienage are reasonable, and not suspect, when they deal with subject matter firmly within the state's constitutional prerogative." *Sugarman v. Dougall*, 413 U.S. 634, 648 (1973); *see also Foley v. Connelie*, 435 U.S. 291, 294 (1978) (holding that "we [have never] held that all limitations on alienage are suspect"). As the Supreme Court reiterated in *Cabell v. Chavez-Salido*, certain state functions permit the exclusion of non-citizens. 454 U.S. 432, 439 (1981). The *Cabell* Court stated as follows:

> We have thus not abandoned the general principle that some state functions are so bound up with the operation of the State as a government entity as to permit the exclusion from those functions of all persons who have not become part of the process of self-government. And in those areas the State's exclusion of aliens need not clear the high hurdle of strict scrutiny because that would obliterate all the distinctions between citizens and aliens, and thus depreciate the historic value of citizenship.

*Id*.

While the *Sugarman* Court and the subsequent cases applying *Sugarman* have primarily addressed the placement of non-citizens into positions establishing the political community, the distinguishing feature between *Sugarman* and the cases applying heightened scrutiny is the same: does the statute relate to economic issues or sovereign functions (the traditional, constitutional

prerogative) of the government. *Id*. at 439. The statute at issue in this case relates directly to State's regulation of public safety and concealed weapons, both which are constitutional prerogatives of the State of Arkansas, not economic issues. Thus, rational basis is the applicable review.

**ii. The Statute's Differential Treatment is Rationally Related to Public Safety, a Legitimate State Interest.**

The prohibition against non-citizens carrying concealed handguns is a rational means of ensuring public safety, a legitimate government interest. A rational basis review only requires a showing that the "differential treatment is rationally related to a legitimate state interest." *Vacco v. Quill*, 521 U.S. 793, 799 (1997); *see also Executive Air Taxi Corp. v. City of Bismark*, N.D., 518 F.3d 562, 566 (8th Cir. 2008). Courts have consistently held that public safety is a legitimate state interest. *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993); *see also Heller*, 554 U.S. at 570. The statute at issue ensures public safety by protecting against the issuance of a concealed weapon permit to those individuals whose criminal backgrounds cannot be fully checked by defendant. The State of Arkansas utilizes the Arkansas Criminal Information Center ("ACIS") and the FBI National Instant Criminal Background Check System ("NCIS") for background checks. *See* Exhibit "A." The ACIS is a state database. The NCIS is a national database that allows inquiries into a person's criminal background at the state and national level. The NCIS identifies individuals on a terrorist watch list, but does not identify international criminal histories. *Id*. By restricting the concealed weapons permit to citizens, the State has made two important recognitions: it is important to obtain a complete criminal history and it is difficult to obtain complete criminal histories from foreign jurisdictions. By denying concealed weapons permits to non-citizens who cannot easily be confirmed to meet it qualifications, the State of Arkansas is creating a rational means of protecting the public from

individuals carrying concealed weapons when his or her background cannot be thoroughly researched by the licensing agency.

**b. Plaintiffs Cannot Demonstrate a Likelihood to Succeed on Their Equal Protection Claim Even Under a Strict Scrutiny Review.**

The statute at issue is narrowly tailored to meet a compelling interest, and thus, plaintiffs cannot demonstrate a likelihood of succeeding on the merits. Strict scrutiny review requires that a law must be narrowly tailored to meet a compelling state interest. *Abrams v. Johnson*, 521 U.S. 74, 82 (1997). The statute survives this test. The statute serves a compelling government interest in protecting the public from concealed weapons. *Kachalsky v. County of Westchester*, 701 F.3d 81, 97 (2nd Cir. 2012) (holding that "states have a substantial, indeed compelling, government interest in public safety and crime prevention). The statute is likewise, narrowly tailored to meet the legitimate government interest. Because the State of Arkansas does not have a database capable of conducting background checks on crimes committed in a foreign jurisdiction, the statute narrowly tailors the issuance of concealed weapons to those who can pass a more comprehensive background check can be completed. *See* Exhibit "A." Because the statute at issue is narrowly tailored to meet a compelling state interest, plaintiffs' motion for a preliminary injunction should be denied.

**B. This Court Should Deny the Motion for Preliminary Injunction Because There is no Threat of Irreparable Harm.**

Plaintiffs cannot demonstrate a threat of irreparable harm. A party seeking a preliminary injunction bears the burden of showing irreparable harm. *Roudachevski v. All-Am. Care Cts.*, Inc., 648 F.3d 701, 706 (8th Cir. 2011). Irreparable harm requires a showing that "harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Id.* A failure to demonstrate irreparable harm may be a sufficient basis for denying

injunction relief. *Caballo Coal Co. v. Indiana Mich. Power Co.*, 305 F.3d 796, 800 (8th Cir. 2002).

Plaintiffs' rely on two previously rejected ideas for the allegation that they will suffer irreparable harm: first, that plaintiffs will suffer a profound loss of security and second, that a constitutional violation equates to irreparable harm. The SAF, along with one of its members, raised both of these arguments before a federal Court in Missouri. *See Plastino*, 2013 WL 1769088 at *1. The *Plastino* Court, noting that plaintiff had waited almost five months before filing its preliminary injunction motion, rejected both arguments. *Id*. at *1. The Court found that the first argument─that plaintiffs would suffer a profound loss of security─was unavailing. The Missouri law did not prohibit non-citizens from openly carrying guns in public or from having guns in their homes. *Id*. at *4. The challenged Arkansas statute likewise does not prevent non-citizens from having a firearm at home. Plaintiffs are simply not prevented from "protecting" themselves.

The *Plastino* Court also found the second argument─that the deprivation of their constitutional rights, even if temporary, resulted in irreparable harm─equally unavailable. The Court found that plaintiffs did not have a Second Amendment right to carry a concealed weapon. And, the Court declined to apply plaintiffs' cases that held a temporary infringement upon a person's constitutional rights results in irreparable harm because the cases involved First Amendment principles. *Id*. at *3. This Court should apply the same reasoning. Plaintiffs have not demonstrated a constitutional violation and plaintiffs' First Amendment cases are inapplicable to this case.

In sum, plaintiffs have failed to meet their burden and prove that "harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Id*.

Plaintiffs' failure to demonstrate irreparable harm is an independent, sufficient basis for denying the preliminary injunction.

**C. This Court Should Deny the Motion for Preliminary Injunction Because the Public has an Interest in Safety**.

The public has an interest in safety. A preliminary injunction would force defendant to issue concealed weapon permits to applicants who, at the conclusion of the case, may not be legally permitted to maintain a permit. The entire basis for the statute—to maintain the safety of the public—would be at risk. Because of the pervasive risk and the public's interest in safety, this Court should deny the preliminary injunction.

**D. This Court Should Deny the Motion for Preliminary Injunction Because Plaintiffs Cannot Make a Strong Showing that Their Threatened Injury Outweighs the Injury the Defendants Will Suffer if an Injunction is Granted.**

The State has a compelling interest in the protection of the public against the risk created with the licensing of concealed weapons. A preliminary injunction forcing defendant to issue concealed weapons permits to applicants with a limited background check creates an increased risk to the public and limits the defendants' ability to protect the public. Defendants' limited ability to protect the public is a significant harm to defendant, which largely outweighs a "threatened injury."

**V. CONCLUSION**

Defendant respectfully requests that this Court deny plaintiffs' motion for a preliminary injunction for all the reasons stated herein.

WHEREFORE, defendant, Colonel Stan Witt, in his official capacity, prays that this Court deny plaintiffs' motion for a preliminary injunction.

Respectfully submitted,

DUSTIN McDANIEL
Attorney General

By: /s/ Mindy D. Pipkin
Arkansas Bar No. 2004067
Assistant Attorney General
323 Center Street, Suite 200
Little Rock, AR 72201-2610
Phone: (501) 682-1314
Fax: (501) 682-2591
mindy.pipkin@arkansasag.gov

ATTORNEYS FOR DEFENDANT

**CERTIFICATE OF SERVICE**

I, Mindy D. Pipkin, certify that on this 14th day of April, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification to plaintiffs' counsel of record.

/s/ Mindy D. Pipkin